# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

KENNETH F. WHEAT,

      Plaintiff,

v.

                              Case No. 2:10CV30

MICHAEL J. ASTRUE, COMMISSIONER,
Social Security Administration,

      Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff KENNETH F. WHEAT ("Wheat or "plaintiff") brought this action under 42 U.S.C. §§ 1383(c)(3) and 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act. This action was referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court recommends that the decision of the Commissioner be VACATED and REMANDED to the Commissioner for further proceedings consistent with this Report and Recommendation.

## I. PROCEDURAL BACKGROUND

On July 25, 2007, Wheat filed an application for DIB and SSI, alleging disability beginning February 26, 2007, due to coronary artery disease, kidney failure, hypertension, hepatitis C and a severe wrist fracture. (R. 75-79). The Commissioner denied his application

initially (R. 52-57), and upon reconsideration, (R. 58-60). Wheat made a timely request for an administrative hearing, (R. 63), which was conducted April 21, 2009, (R. 29).

On May 7, 2009, Administrative Law Judge ("ALJ") Irving A. Pianin found that plaintiff was disabled within the meaning of the Social Security Act, as of January 1, 2009, but denied his claim for DIB and SSI for any period of time prior to that date. (R. 18-26). Wheat appealed that portion of the ALJ's decision which denied his claim for benefits between February 26, 2007 and December 31, 2008. The Appeals Council denied review of the ALJ's decision (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), on January 1, 2010, Wheat filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

Wheat was born on June 2, 1959, and was forty-seven years old at the time of the alleged onset of disability. (R. 75). He has a tenth grade education and never obtained a GED. (R. 31). He has been employed as a carpenter and dry dock hand, (R. 42, 105), which work the Vocational Expert ("VE") described as "very heavy, unskilled labor." (R. 14).

Wheat's extensive and serious medical history began prior to his alleged onset date of February 26, 2007. His medical records document a history of coronary artery disease, poorly controlled hypertension, kidney failure, Hepatitis C, and, after October 2007, a serious right wrist fracture. (R. 492-93). In March, 2006, Wheat began treating with a kidney specialist, Dr. Abdul Chaudhry, for renal failure which had been initially diagnosed in 2001 (R. 404-05). Dr. Chaudhry diagnosed Wheat as suffering from uncontrolled hypertension, and

2

chronic renal insufficiency likely caused by hypertensive nephrosclerosis. (R. 405). On May 17, 2006, Dr. Chaudhry saw Wheat again. His records from that date indicate Wheat was recently hospitalized for G.I. bleeding, and found to have Hepatitis C. Dr. Chaudhry was concerned that Wheat's kidneys and liver were at risk of failure due to his renal insufficiency and Hepatitis C infection. (R. 403).

In August, 2006, Wheat's coronary artery disease led to cardiac bypass surgery. (R. 210-212). At that time, his diagnoses included hypertension with cardiomyopathy, renal failure, secondary to hypertensive disease, chronic Hepatitis C, mild chronic obstructive pulmonary disease, hyperlipidemia, and anemia. (R. 210). He underwent surgery on August 11, 2006. After his surgery, he also received a short period of temporary dialysis. (R. 216 -218).

On November 9, 2006, Wheat saw Dr. Chaudhry in follow-up for his continued problems with hypertension and renal failure. Although he reported doing well, his blood pressure was 180/127. Dr. Chaudhry diagnosed rental failure, uncontrolled hypertension and Hepatitis C. He prescribed medication for his blood pressure and scheduled a follow-up visit. (R. 401).

Wheat saw Dr. Chaudhry again on March 7, 2007. At that time, Wheat's heart sounds were normal, with no pericardial rub, gallop, or murmur. (R. 396). He had recovered well from his bypass surgery; however, he reported problems with nausea and leg swelling. His blood pressure was still uncontrolled at 210/130, which Dr. Chaudhry stated was partially due to Wheat's inability to afford medication. (R. 396-397).

3

In April, 2007, two months after his alleged onset date of February 26, 2007, Wheat's blood pressure was still uncontrolled at 199/130. Dr. Chaudhry increased his medication and counseled him to take it consistently. (R. 264). The following month Wheat continued to have problems with leg swelling and shortness of breath. His blood pressure was 210/120, which Dr. Chaudhry again described as uncontrolled. (R. 258).

By July 27, 2007, Dr. Chaudhry had finally brought Wheat's blood pressure under control; however, Wheat still complained of swelling in his legs. (R. 386). On September 13, 2007, Wheat reported to Dr. Chaudhry that he felt weak, had pain in both legs, and he was lethargic to the point where he had difficulty standing. (R. 384).

Wheat fractured his right wrist in October 2007, while assisting a family member in stabilizing a ladder. The fracture was severe and required surgical repair through an open reduction internal fixation procedure. (R. 298). The procedure included fixing the bones with a metal plate and screws. (R. 299).

Wheat saw Dr. Chaudhry again in November, 2007. At that time, he still suffered from slight swelling in his lower extremities and his hypertension was again poorly controlled. (R. 383). Five months later, on April 24, 2008, Dr. Chaudhry noted that Wheat suffered from a lack of energy. He reported feeling weak. He was still having difficulty affording his medication and as a result, Dr. Chaudhry referred him to a Social Service agency for help with medication expenses. (R. 381). He diagnosed Wheat with chronic kidney disease, Hepatitis C, swelling secondary to nephritic syndrome, and a history of hypertension which was presently controlled under Wheat's medication regimen. (R. 381-82).

4

On May 12, 2008, Dr. Chaudhry completed a Multiple Impairment Questionnaire in connection with Wheat's application for benefits. (R. 483-91). The report confirms Dr. Chaudhry's diagnoses of chronic kidney disease, including the period of acute renal failure and dialysis in 2006, nephritic syndrome, coronary artery disease, and Hepatitis C. The Questionnaire also noted Wheat's prior G.I. bleed and bypass surgery. (R. 483). Dr. Chaudhry concluded that Wheat suffered from fatigue, general weakness, shortness of breath, and a poor appetite. (R. 485). He made detailed observations concerning Wheat's physical abilities, concluding that he could sit for three hours, and stand or walk only one hour out of an eight hour workday. (R. 486). His report found Wheat could lift ten pounds only occasionally and never lift or carry more weight. (R. 487). He found significant limitations in Wheat's ability to do repetitive reaching, fingering, and lifting, as well as limitations in his ability to grasp, turn, and twist objects and perform fine manipulations. (R. 487-88).

Dr. Chaudhry estimated that at work Wheat would need to take unscheduled breaks to rest every two hours during an eight-hour work day and that these breaks would last between thirty minutes to one hour. (R. 489). He found that· Wheat would be absent from work, on average, more than three times a month as a result of his impairments and treatment. (R. 490). Dr. Chaudhry continued to see Wheat in the fall of 2008 and winter of 2009 and his symptoms were largely unchanged. (R. 636-655). On April 17, 2009, Dr. Chaudhry revisited his May 2008 assessment in a narrative report. He stated that .Wheat continued to be treated bi-monthly for his chronic kidney disease and renal insufficiency, uncontrolled hypertension, nephritic syndrome and Hepatitis C. He noted that Wheat's symptoms, prognosis, and

5

limitations were unchanged from the May, 2008 assessment and concluded that Wheat was totally disabled and incapable of any type of gainful employment. (R. 657-58).

In addition to his treatment with Dr. Chaudhry, Wheat occasionally saw Dr. Charles Marks between October, 2005 and February, 2008. Dr. Marks is an internist, and not a specialist. Although his treatment was of a more general nature, his diagnoses generally mirrored Dr. Chaudhry's and included treatment for chronic renal insufficiency, swelling in his lower extremities (R. 321), hypertension (R. 317), and follow-up related to his coronary artery disease and bypass surgery (R. 326). Dr. Marks also completed a narrative concerning Wheat's medical condition on February 14, 2008. He found Wheat continued to have trouble with his blood pressure, had developed diabetes, and had end-stage renal failure that might eventually require dialysis. (R. 305). On that basis, he concluded that Wheat was "totally disabled and unable to work since March of 2007." (R. 305).

In addition to his treating physicians, Wheat's medical records were evaluated by two physicians on behalf of the State agency. On September 21, 2007, Dr. Carolina Longa reviewed the medical evidence and concluded that Wheat could occasionally lift twenty pounds and frequently lift ten pounds; stand or walk two-four hours in an eight-hour workday and sit up to six hours. Dr. Longa concluded that Wheat had unlimited ability to push and pull, could frequently balance, stoop, kneel, crouch, or crawl, and occasionally use ramps and stairs but never climb ladders, ropes or scaffolds. (R. 283-87).

Thereafter, in connection with the hearing process, Wheat's records were also reviewed by Dr. David C. Williams. Dr. Williams issued a one-sentence report stating that he had "reviewed the medical evidence in file and the physical assessment of September 21, 2007 is

6

affirmed as written." (R. 377). Dr. Williams' brief report does not mention Wheat's comminuted fracture of the right wrist or its surgical repair, both of which arose between his review and Dr. Longa's.

In addition to the medical evidence, the ALJ received testimony from Wheat and a VE. Wheat described his daily activities, to include light housekeeping and reading (R. 10-11). He testified he could not lift more than "a gallon of milk" (R. 9) and could not sit or stand for long periods of time. He stated he was regularly fatigued and could not get through a day without sleeping. (R. 10). The VE testified about work available in the national economy based on hypothetical limitations framed by the ALJ and Wheat's counsel. (R. 43-45).

### III.  STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the

---

[1]"The issue . . . therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)).

Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for a period of disability and disability insurance benefits under §§ 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

To be eligible for SSI payments under Title XVI of the Act, the claimant, in addition to satisfying the income and resource requirements in 42 U.S.C. § 1382(a) and 42 U.S.C. § 1382(b), must also satisfy the basic eligibility and definitional requirements for disability found in 42 U.S.C. § 1381(a) and 42 U.S.C. § 1382(c). ·

The Social Security Regulations define "disability" as the:

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[2] 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or his physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or his from performing his or his past relevant work?

5. Does the individual's impairment or impairments prevent him or his from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The

_____

[2]The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2. However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a VE to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10, 1983 WL 31251 (S.S.A.).

burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

"When proceeding through this five step analysis, the ALJ must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age, and work experience." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.    ALJ's Decision

In the present case, the ALJ made the following findings under the five-part analysis: (1) Wheat has not engaged in substantial gainful activity for more than a twelve-month period after February 26, 2007 (the alleged onset date of disability)[3]; (2) he has severe impairments of chronic renal failure, hypertension, coronary artery disease (status post) coronary bypass surgery, hepatitis C, and a right wrist fracture which arose after October, 2007; (3) his impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) Wheat is unable to perform past relevant work, but prior to January 1, 2009, he had the RFC to perform sedentary work, requiring him to stand and walk no more than two hours in an eight-hour day, does not involve more than occasional· postural activity, and avoids exposure to heights and hazards; and (5) there are jobs that exist in significant numbers in the national economy that Wheat could have performed. (R. 20-26).

In his motion for summary judgment, Wheat alleges the following specific errors:

---

[3]The ALJ noted that the plaintiff had posted earnings after the alleged onset date which he attributed to short-term disability payments and not to any work activity of prolonged duration.  (R. 20).

(1) the ALJ failed to indicate what weight, if any, was accorded to the medical opinion of his treating physician, Dr. Chaudhry, and failed to give the opinion "controlling weight"; (2) the ALJ failed to properly evaluate Wheat's credibility; and (3) the ALJ relied upon flawed testimony from the VE as a result of an improperly framed hypothetical. In his motion for summary judgment, the Commissioner argues that substantial evidence supports the ALJ's analysis of Dr. Chaudhry's opinion, his credibility assessment, and the calculation of RFC. For the reasons set forth below, the Court agrees that the ALJ failed to adequately explain the weight given to the medical opinions, and relatedly, framed hypotheticals which were not supported by the medical evidence.

**B.     The ALJ did not adequately explain the weight assigned to medical opinions in determining Wheat's Residual Functional Capacity.**

When a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must then determine the plaintiff's RFC. 20 C.F.R. §§ 404.1520(e) and 416.920(e). RFC is defined as the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); see SSR 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). The ALJ uses that RFC at step four of the sequential analysis to determine whether the plaintiff can perform his past relevant work. 20 C.F.R. §§ 404.1545(a)(5)(i) and 416.945(a)(5)(i). If it is determined that the plaintiff cannot perform past relevant work, the ALJ uses the RFC at step five to determine if the plaintiff can make an adjustment to any other work that exists in the national economy. 20 C.F.R. §§ 404.1545(a)(5)(ii) and 416.945(a)(5)(ii).

At the administrative hearing level, the ALJ has the responsibility of determining RFC. 20 C.F.R. §§ 404.1546(c) and 416.946(c). RFC is determined by considering all the relevant medical and other evidence[4] in the record. 20 C.F.R. §§ 404.1545(a)(3), 404.1527(b), 416.945(a)(3), and 416.927(b). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairments(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).

In the present case, the ALJ found that, prior to January 1, 2009, Wheat had the RFC to perform sedentary work, which would not require him to stand or walk more than two hours in an eight-hour day and would not involve more than occasional postural function. (R. 22). In doing so, the ALJ essentially rejected the medical opinion of plaintiff's treating physicians, Dr. Chaudhry and Dr. Clark.

Wheat asserts that the ALJ's evaluation of these medical source opinions is not supported by substantial evidence and alleges several errors in the ALJ's determination of his RFC. Wheat contends that the ALJ erred by failing to properly explain the weight accorded to each medical opinion. He also argues that the ALJ failed to sufficiently explain his decision to not give controlling weight to the opinion of Dr. Chaudhry. In response, the Commissioner contends that the ALJ accorded appropriate weight to the opinions, and his decision is supported by substantial evidence.

In making the RFC determination, the ALJ must consider the objective medical

---

[4]"Other evidence" includes statements or reports from the claimant, the claimant's treating or nontreating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. §§ 404.1529(a) and 416.929(a).

evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. Generally, the opinion of a treating physician is accorded more weight than that of a non-examining consultant. 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1). Under the federal regulations and Fourth Circuit case law, a treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. at §§ 416.927(d)(2) and 404.1527(d)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

However,

> a finding that a treating physician's opinion is not well-supported
> by medically acceptable clinical and diagnostic techniques or is
> inconsistent with the other substantial evidence in the case record
> means only that the opinion is not entitled to 'controlling weight,'
> not that the opinion should be rejected.

SSR 96-2P, 1996 WL 374188, at *4 (S.S.A.). The regulations require the ALJ to evaluate every medical opinion. Accordingly, even if a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations.]" Id. at *5. Those factors are: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. §§ 416.927(d)(2)-(6) and 404.1527(d)(2)-(6).

13

The ALJ must articulate "good reasons" for his decision as to the weight accorded to the opinion of a treating physician. Id. at §§ 404.1527(d)(2) and 416.927(d)(2).[5] Therefore, when the ALJ's decision is not fully favorable to the claimant, the decision must contain

> specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2P, 1996 WL 374188, at *5 (S.S.A.). This specificity requirement is necessary because the reviewing court

> face[s] a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the records as a whole to determine whether the conclusions reached are rational."

Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977) (quoting Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)). If the ALJ does not "explicitly" indicate the weight accorded to all the relevant evidence, the reviewing court is unable to determine if the ALJ's findings are supported by substantial evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

In the present case, the ALJ states that he carefully considered the entire record, including the opinion evidence in accordance with the requirements of the applicable regulations and SSR's, (R. 17); however, merely stating that the record was properly considered does not in and of itself suffice.

---

[5] In fact, under the applicable regulations, the ALJ is required to "explain" in his decision the weight accorded to all opinions--treating sources, nontreating sources, State agency consultants, and other nonexamining sources. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii).

In support of his RFC assessment, the ALJ relied principally on the evidence from medical reviewers, which he gave "moderate weight." (R. 23). Both reviewers concluded that Wheat was capable of light work, but the ALJ found – based on the time between the reviewers' reports and Wheat's subjective complaints – that his condition had worsened, warranting a more restrictive RFC permitting only sedentary work. (R. 23).

The ALJ also found Wheat's self-report concerning his daily activities persuasive. The opinion notes that the functional reports submitted at the time Wheat applied for benefits established that he could "live alone, had no problem caring for his personal needs, performed light cleaning, prepared his own simple meals, shopped, went out daily, drove a car, and interacted socially with family members." (R. 23, Ex. 3-E). The ALJ summarized this and other evidence from plaintiff's testimony concluding that his "own activity level as described and his good response to treatment are consistent with the capacity to perform at least sedentary work." (R. 23).

With regard to the treating physicians' opinions, the ALJ afforded no weight to Dr. Clark's opinion that Wheat was "totally disabled" and "unable to work," as these are findings reserved to the Commissioner. (R. 23) (citing SSR 96-5p). He also concluded that any "unidentified limitations" implied by Dr. Clark's opinion were not supported by the record. Given the very few medical records from Dr. Clark and the lack of detailed treatment notes supporting his opinion, the undersigned is unable to conclude that the ALJ's analysis of Dr. Clark's opinion was lacking.

With regard to Dr. Chaudhry, however, the ALJ's analysis fails to account for his lengthy treatment relationship with Wheat, his specialty which bears on Wheat's most profound

limiting condition, and the extensive and well-documented record of his observations and care. Specifically, the opinion did not address what weight, if any, was afforded Dr. Chaudhry's specific and consistent description of Wheat's limitations which predate the Commissioner's finding of disability. Because the ALJ's opinion concluded Wheat was not disabled prior to January 1, 2009, the ALJ was required to give "specific reasons" why Dr. Chaudhry's contrary opinion did not merit controlling weight. Arnold, 567 F.2d at 259.

The ALJ's opinion referred only to "evidence submitted after the hearing", presumably Dr. Chaudhry's narrative report dated April 17, 2009.[6] (R. 24, see also R. 657 – 58, Ex. 18-F, pp. 2-3). The ALJ noted that Dr. Chaudhry's April 2009 letter concluded that Wheat was "unable to sustain work activity on a schedule comparable to eight hours a day, five days a week" and "identified specific limitations that support a finding of 'disabled'." (R. 24). The ALJ then observed that Dr. Chaudhry's opinion was dated later than the month disability was established in his decision (January 1, 2009). As a result, the ALJ's written decision makes only a cursory effort to analyze Dr. Chaudhry's lengthy prior treatment history. The opinion states:

> [I]f Dr. Chaudhry intended to state that the claimant has been unable to sustain work activity since he began treating him in 2006, the analysis in this decision fails to support such a conclusion, as the claimant's condition has progressed over time and was certainly not as work limiting in early 2007 as Dr. Chaudhry described.

(R. 24).

This analysis of Dr. Chaudhry's opinion is not supported by substantial evidence and remand is required to permit the ALJ to assess Dr. Chaudhry's opinion in light of the

---

[6] The April 17, 2009 narrative is accompanied in the Record by a letter from Wheat's counsel dated April 27, 2009, six days after Wheat's April 21, 2009 hearing. (R. 656).

undisputed worsening of Wheat's symptoms over time and Dr. Chaudhry's explicit conclusion that Wheat suffered intensive work-limiting symptoms at least as early as May 12, 2008.

Although received after the date of the hearing, Dr. Chaudhry's April 17, 2009 narrative summary specifically incorporates his Multiple Impairment Questionnaire dated May 12, 2008. In the narrative, Dr. Chaudhry described the May 12, 2008 report as "still accurate to date." (R. 658). While Dr. Chaudhry's narrative also refers to the date his treatment began (2006), it does not state that Wheat's severe work-related limitations began on that date, rather it notes that Dr. Chaudhry's opinion was based on his "consistent treatment since March 17, 2006, and the complexity of Mr. Wheat's combined impairments." (R. 658).

The ALJ's opinion apparently mistook this 2006 reference for a suggestion that Wheat's work-limiting symptoms began concurrent with Dr. Chaudhry's treatment, however, the narrative report does not state this. Instead, it refers to Dr. Chaudhry's May 12, 2008 assessment, which was also introduced during the hearing, along with other medical records. (R. 483 – 491, Ex. 13-F, pp. 6 – 14). The ALJ apparently missed this internal reference – as his opinion incorrectly noted that the narrative reflected "treatment records after January, 2009." (R. 23). Because the May, 2008 report was part of the record, was not mentioned by the ALJ, and was "still accurate" at a time the ALJ found Wheat disabled, the undersigned cannot conclude that the ALJ's decision to disregard Dr. Chaudhry's opinion is supported by substantial evidence.

Wheat's symptoms plainly worsened over time, a finding made by the ALJ and entirely consistent with Dr. Chaudhry's lengthy treatment record. In fact, the Multiple Impairment Questionnaire completed May 12, 2008, specifically states that the earliest date

17

Wheat's limitations began would have been May, 2007. Neither the May, 2007, nor the May, 2008 dates are addressed in the ALJ's opinion. Instead, the ALJ merely distinguished a hypothetical suggestion that Wheat's total disability began earlier in 2006. Moreover, the basis for rejecting this hypothetical onset date was primarily Wheat's self-report concerning his activities of daily living which was also completed approximately ten months prior to Dr. Chaudhry's Multiple Impairment Questionnaire. (R. 17, 124).

Having reviewed the ALJ's report and the reasons he articulated in that report, the Court finds that the ALJ's analysis of Dr. Chaudhry's opinion is insufficient to permit a proper review of his findings under the substantial evidence standard. The ALJ's decision to defer to the opinion of a non-examining medical consultant and discount the opinions of Wheat's treating physicians requires consideration of several factors and a recitation of the reasons "why" the ALJ made the decision he did. On review, the Court is not permitted to infer reasons to support the ALJ's decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) ("[T]he magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's opinion should have been evaluated based solely on the reasons stated in the decision.") Instead the appropriate remedy is to vacate denial of Wheat's claim for benefits prior to the onset date of January 1, 2009, and remand for further proceedings.

**C.    The hypothetical framed by the ALJ must also be evaluated in light of Dr. Chaudhry's opinion concerning Wheat's limitations.**

Remand will require the ALJ to analyze Dr. Chaudhry's opinions concerning Wheat's limitations in connection with the testimony of a VE. In reaching his decision that

18

Wheat was capable of performing work available in significant numbers in the national economy, the ALJ relied upon a VE's testimony in response to hypotheticals framed by both the ALJ and Wheat's counsel. When relying on VE testimony based on hypothetical questions, the hypotheticals posed must account for all of the claimant's limitations as shown by the record. Walker v. Bowen, 889 F. 2d 47, 50-51 (4th Cir. 1989). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. Johnson v. Barnhart, 434 F. 3d 650, 659 (4th Cir. 2006) (citing Walker, 889 F. 2d at 50). Failing to consider limitations shown by the evidence, and then relying upon the errant hypothetical to form an opinion about the availability of work suitable to the claimant is error. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D. Va. 2002). At Wheat's hearing, the ALJ posed the following relevant hypothetical:

> [I]f the individual were capable of only sedentary work, again with a maximum of two hours of eight hours standing and walking, occasional postural activities and no exposure to heights and hazards would there be any sedentary or unskilled work for them.

(R. 43).

In response to this question, the VE identified opportunities as a general information clerk, hand picker, and cashier. The ALJ then modified the hypothetical to include a limitation which he attributed to Mr. Wheat's testimony, that he needed to "lie down and/or sleep." (R. 43). In response to this additional restriction, the VE testified that would preclude all work. Later, on cross examination, Wheat's counsel added "moderate limitations in grasping, turning, twisting objects" and "marked limitations in the use of arms for reaching." (R. 44). The VE testified that these reaching and fine motor skill limitations would preclude work as a cashier or hand picker, but permit work as an information clerk. The attorney then

19

asked if Wheat could still perform work as an information clerk if he had to "take unscheduled breaks every, every two hours for about 30 to 60 minutes." The VE responded that he would not. (R. 44-45).

While these hypothetical questions, taken together, accurately presented Wheat's limitations to the VE, the ALJ's opinion relied only on the first hypothetical, omitting restrictions in Wheat's motor skills as well as the restriction that he be required to take periodic unscheduled breaks.

As the foregoing discussion demonstrates, this hypothetical failed to account for all of plaintiff's limitations which were supported by the record. In choosing to disregard the later questions, which included limitations specifically described in Dr. Chaudhry's May, 2008 assessment (R. 487-89), the ALJ failed to consider all of plaintiff's functional limitations, and failed to adequately explain why limitations described in Dr. Chaudhry's May, 2008 assessment were disregarded. On remand, the ALJ's opinion should either consider the VE's testimony in light of all of Wheat's diagnosed impairments, or explain why the impairments omitted are not supported by the record.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the final decision of the Commissioner be VACATED and REMANDED for further proceedings consistent with this Report and Recommendation. Specifically, the fact-finder should reevaluate the weight attributed to the physicians' opinions pursuant to Part IV, Section B of this Report and Recommendation, and the availability of suitable work in light of the VE's answers to all of the hypotheticals as discussed in Part IV, Section C. As made necessary by findings made with

20

respect to Wheat's ability to perform work, the fact-finder may also need to make findings with respect to the date of onset of any disability which predates the ALJ's decision that Wheat became disabled on January 1, 2009.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations.   Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

January 3, 2011

Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Joel C. Cunningham, Jr.
Joel C. Cunningham, Jr., PC
120 Edmunds Blvd.
P. O. Box 459
Halifax, VA  24558

Jeannine LaPlace
Law Office of Harry J. Binder & Charles E. Binder PC
60 East 42nd Street, Suite 520
New York, NY  10165

Joel Eric Wilson
United States Attorney's Office
101 W. Main St.
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____
           Deputy Clerk

_____, 2011